JEROME T. WHITE *vs.* HAMILTON A. HILL.

Suffolk. November 19, 1888. — January 5, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Assignment for Benefit of Creditors — Insolvency — Reimbursement of Trustee.*

If a debtor assigns all his property to a trustee for the benefit of creditors, and his assignee in insolvency afterwards appointed avoids the assignment, the trustee may retain out of the property assigned, or the proceeds thereof, enough to reimburse himself for any reasonable and necessary expenditures made by him in good faith in carrying out the assignment.

CONTRACT, brought for the benefit of Charles M. Kimball, upon an account annexed, to recover for work done. Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions, in substance as follows.

The defendant by his answer admitted the debt, but alleged that White, on April 18, 1886, had filed his petition in the Court of Insolvency, and that assignees to whom his estate was duly assigned claimed and demanded payment of the debt, and prayed that Kimball and the assignees might be required to interplead in the action. Kimball appeared and claimed the amount of the debt by virtue of an assignment under seal made to him by White, dated March 15, 1886, which covered all the

property of the latter not exempt from levy on execution, upon the following trusts :

" 1. To continue the printing business formerly carried on by me at No. 383 Washington Street, Boston, for a time not exceeding two months from this date, in order to complete work on hand, and, if possible, to obtain a purchaser for the machinery, type, etc., used in the business.

" 2. To sell and dispose of the assigned property on the most favorable terms which said Kimball can obtain, either at public or private sale ; but the machinery, type, and other material are not to be sold, except in bulk, without my consent.

" 3. After deducting from the proceeds of the sale of the assigned property, and from collections of accounts, reasonable compensation for said Kimball's services, and all expenses properly paid by him in continuing the business as aforesaid, and in connection with, or on account of, the assigned property, to apply the remainder of such proceeds, first, to the payment in full of such debts as by the laws of Massachusetts are entitled to priority or preference ; and secondly, to the payment, *pro rata*, of all my other just debts.

" Should the proceeds of such sale be sufficient, not only for the full payment of all my debts, but to leave a surplus in the hands of my assignee, he is to pay such surplus to me. Said Kimball is to use his best judgment and all reasonable efforts to realize as much as possible from the assigned property."

The assignees also appeared and claimed the debt by virtue of the insolvency proceedings, and alleged that the assignment to Kimball " was made with the knowledge of said White's insolvency on the part of said Kimball and said White, and that the same was in fraud of White's creditors; and that said Kimball never reduced said debts to said possession."

There was evidence that, for many years prior to the assignment to Kimball, White had been carrying on a printing business at No. 383 Washington Street, Boston ; that at and before the time of the assignment said White was insolvent, which fact was known to Kimball, and White was unable to obtain materials for his business, or to pay his running expenses ; that at this time he had in hand several jobs of work partially completed, the largest one of which was a contract for work men-

tioned in the account annexed ; that while in this condition he applied to Kimball for assistance, which Kimball refused to give unless he should be secured ; that White, being unable to obtain pecuniary assistance, made the assignment to Kimball, who thereupon took possession of the property, and proceeded to carry on the business, in accordance with the terms of the assignment, for a period of about five weeks, and made advances out of his own funds for the purchase of material, and to pay labor and rent bills and other running expenses ; and that the amount of such advances in excess of what he received, or what had been repaid him, exceeds the amount set out in the account annexed. Although question was raised as to the good faith of the instrument as matter of law, no evidence was introduced except, as above stated, that the assignment was not made and acted upon in good faith by the parties.

Kimball, as the plaintiff in interest, requested the judge to rule : " 1. That the assignment in question was not in fraud of the laws relating to insolvency. 2. That, upon the facts proved, he, the said Kimball, was entitled to the amount in suit. 3. That if the court shall find that said assignment was made and accepted in good faith, and that the assignee, by reason thereof, and relying upon it in good faith, made disbursements and incurred expenses in carrying out its provisions, which have not been repaid to him, he is entitled to be reimbursed for such unpaid balance from the fund in suit."

The judge refused so to rule, but ruled that the assignment to Kimball was in fraud of the insolvent laws, and found for the assignees ; and Kimball alleged exceptions.

*C. P. Weston,* for Kimball.

*A. D. Bosson,* for the assignees.

MORTON, C. J. The assignment from White to Kimball was voidable by the assignees of White, subsequently chosen in the insolvency proceedings instituted by him. But the question in this case is, whether, upon such avoidance by the assignees, Kimball has the right to retain enough of the property assigned to reimburse him for the expenses incurred by him in carrying out the purposes of the assignment.

It was held in *Bartlett* v. *Bramhall,* 3 Gray, 257, that, where a debtor assigned all his property for the benefit of his creditors

by an assignment which was voidable by creditors, and afterwards was declared insolvent, the assignee in insolvency could recover of the trustee the property assigned, and the proceeds thereof, but that the trustee was entitled to retain enough to reimburse him for the necessary expenses of collection. The principle of this case governs the case at bar.

The assignment was made in good faith. The property assigned was a printing establishment. The purpose of the assignment was that the trustee should sell the property for the benefit of the creditors of the assignor, and that, the better to effect this purpose, and to complete several jobs of work partly executed, the trustee should temporarily carry on the printing business at his own expense, with the right to be reimbursed out of the proceeds. Kimball in good faith carried on the business for five weeks, making advances of his own funds for the purchase of materials and the payment for labor, rent, and other expenses, and completing the contracts which were partly executed. If the assignees are entitled to receive all the proceeds of the expenditures made by Kimball, it is clear that they get not only the property belonging to White, but also a considerable amount of the property of Kimball. This is not just, and we think that Kimball is entitled to retain any reasonable and necessary expenditures made by him in good faith under his contract with White. See *Carnes* v. *White*, 15 Gray, 378.

It follows that, upon the facts appearing in this bill of exceptions, the Superior Court erred in ruling that the assignees were entitled to the fund in the hands of the defendant.

*Exceptions sustained.*